# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MALO, INC.,

      Plaintiff/Counter Defendant.

v.

ALTA MERE INDUSTRIES, INC., <u>et al.</u>,

      Defendants/Counter Claimants.

Case No. 02:06-CV-01449-KJD-GWF

**<u>ORDER</u>**

On November 29, 2006, Defendant Alta Mere Industries, Inc. ("Alta Mere") filed a Motion for Mandatory Preliminary Injunction (#15). Plaintiff Malo, Inc. ("Malo") filed a Response (#17), to which Defendant filed a Reply (#21). On May 29, 2007, the Court held an evidentiary hearing on the Motion for Mandatory Preliminary Injunction (#15), which was continued through May 30, 2007. Having considered the Motion, Response, Reply, arguments, and all evidence properly presented in this case, the Court **HEREBY GRANTS** Defendants' Motion for a Mandatory Preliminary Injunction (#15) for the reasons stated herein.

1

**I. Background**

On October 31, 1994, April 26, 1995, and November 3, 1999, Mark Loiacano ("Loiacano") and AMI Franchising ("AMI"), Defendant Alta Mere's predecessor in interest, entered into three franchise agreements respectively.  Under the franchise agreements Loiacano obtained the right and undertook the obligation to operate an Alta Mere window tinting and car alarm system franchise ("franchise business") for a term of ten years.  On May 11, 1995, Loiacano incorporated L&H Development, Inc. ("L&H") under the laws of the state of Nevada as a perpetual, for profit corporation, through which Loiacano operated the franchise business.

Sometime after entering into the franchise agreements, Loiacano allegedly defaulted on his obligations under the agreements and Alta Mere filed two suits against Loiacano and L&H respectively in the United States District Court for the District of Illinois, Eastern Division, and obtained default judgment against Loiacano in the amount of $142,329.05, and against L&H in the amount of  $170,329.62.  On June 2, 2004, Loiacano filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Nevada.  Alta Mere filed a Proof of Claim in the amount of $162,108.26 and an adversary complaint against Loiacano and L&H.  Thereafter, the Bankruptcy Court ordered Alta Mere and Loiacano to participate in a mandatory settlement conference.  The parties attended a settlement conference in which they ultimately came to an agreement that was signed by both parties on or about August 25, 2005.[1]

Under the terms of the settlement agreement the parties agreed to renew the franchise agreement with Alta Mere for one additional year.  Additionally, Loiacano and Malo were required to immediately list the franchise business for sale as an Alta Mere franchise with a qualified broker for a period of one year, at the end of which, Alta Mere would have the option, exercisable within

---

[1]Alta Mere alleges that sometime during the bankruptcy proceeding, Loiacano incorporated Malo, and transferred all of the assets of the Franchise Business to Malo (Def.'s Mot. for Prelim. Inj. at 5). Allegedly, Loiacano and Malo then began operating a competing business against Alta Mere under the name of "Sin City Tinting and Alarm," at the site of the Franchise Business. Id.

1  sixty (60) days, to purchase the franchise business for $50,000.  Also pursuant to the settlement

2  agreement, Alta Mere agreed to dismiss all pending litigation in Illinois, the adversary complaint, the

3  two default judgments, and to withdraw its Proof of Claim in Loiacano's pending Chapter 7 matter.

4        The Franchise was not sold during the listing period as set out in the settlement agreement,

5  and Alta Mere informed Loiacano's attorney that it wished to exercise its option to purchase the

6  business for $50,000.[2]  Overall, Alta Mere communicated to Loiacano, via his attorney, of their

7  desire to purchase the franchise according the settlement agreement on several occasions.  According

8  to the record, there was some confusion between the parties regarding the lease of the franchise

9  property, who was to pay for the lease, and to which of the parties the lease was to be extended.

10  Likewise, there was confusion regarding the renewal of a Yellow Page ad for the franchise, and who

11  was to pay for the ad.   Alta Mere alleges that Loiacano and Malo never intended to sell the franchise

12  business, as evidenced by various alleged breaches of the settlement and franchise agreements,

13  namely failing to list the franchise business with a qualified broker, refusing to sell the franchise to a

14  third party, and failing to renew or extend the franchise business property lease.[3]  Loiacano, on the

15  other hand, alleges that the purchase was never consummated because Alta Mere requested certain

16  documents not specifically required by the Settlement Agreement, refused to wire the purchase

17  money to Loiacano's attorney as a show of good faith toward the purchase, and because the draft

18  purchase agreement Alta Mere sent to Loiacano "contained terms to which Loiacano never agreed"

19  (Pl.'s Opp. at 4–6).

20

21

22        [2] At the evidentiary hearing on May 30, 2007, Loiacano admitted that the franchise business was never listed
23  for sale as an Alta Mere franchise with a qualified broker.

24        [3]At the evidentiary hearing, Stewart Reeder ("Reeder"), a former employee of Plaintiff, testified, and Loiacano
    likewise admitted, that in spite of Reeder's genuine inquiries into buying the franchise business during the listing period,
25  Loiacano never provided Reeder with a firm purchase price or financial documentation that would support Loiacano's
    belief that the business was worth at least Two-Hundred thousand dollars ($200,000).

26

1  As a result, Loiacano now refuses to sell the franchise to Alta Mere, arguing that Alta Mere

2  failed to close on the purchase of the franchise business during the specified sixty-day period.  In

3  opposition, Alta Mere argues that it did exercise its option to buy the franchise business by indicating

4  its wish to purchase the franchise, and that Loiacano is bound by the settlement agreement to sell the

5  franchise as specified, for $50,000.

6  Initially, Plaintiff Malo filed suit in the District Court of Clark County, Nevada, seeking

7  declaratory relief and tortuous interference with a business/contractual relationship.  Defendant Alta

8  Mere removed the case to this Court on November 11, 2006.  Alta Mere (as Counter Claimant) filed

9  the immediate Motion for Mandatory Preliminary Injunction (#15) on November 29, 2006,

10  requesting that the Court require Plaintiffs to convey all assets of the business currently operating as

11  "Sin City Tinting and Alarm" located at 3480 B. South Rainbow Boulevard in Las Vegas, Nevada, to

12  Alta Mere.  Alta Mere also seeks to enjoin Loiacano's and Malo's use of telephone numbers

13  (702)243-8338, and (702)454-4000 ("the telephone numbers") which Alta Mere claims it rightfully

14  owns.  Moreover, Alta Mere also seeks that the Court compel Loiacano and Malo to direct the

15  relevant telephone companies to transfer the telephone numbers to Alta Mere.

16  **II.  Analysis**

17  **A. Preliminary Injunction Standard**

18  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be

19  granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v.

20  Armstrong, 520 U.S. 968, 972 (1997) (quotations and citations omitted).  A preliminary injunction is

21  appropriate when a plaintiff can demonstrate either: (1) a combination of probable  success on the

22  merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were

23  raised and the balance of hardships tips sharply in the plaintiff's favor. Lands Council v. Martin, 479

24  F.3d 636 (9th Cir. 2007)(citing  Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810,

25  813 (9th Cir.2003).  The two options represent two points on a sliding scale in which the required

26

4

degree of irreparable harm increases as the probability of success decreases. <u>Oakland Tribune Inc. v.</u>
<u>Chronicle Publishing Co.</u>, 762 F.2d 1374 (9th Cir. 1985).  The Ninth Circuit has held that as an
"irreducible minimum," in order to grant a preliminary injunction, the moving party must
demonstrate "a fair chance of success on the merits, or questions . . .  serious enough to require
litigation." <u>Id.</u>; <u>Sports Form, Inc. v. United Press Int'l, Inc.</u>, 686 F.2d 750, 753 (9th Cir. 1982).

In cases such as this, where a party "seeks mandatory preliminary relief that goes well beyond
maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a
preliminary injunction."  <u>Martin v. International Olympic Committee</u>, 740 F.2d 670, 675 (9th Cir.
1984)(citing <u>Anderson v. United States</u>, 612 F.2d 1112, 1114 (9th Cir.1980)).  While a prohibitory
injunction preserves the status quo, <u>Johnson v. Kay</u>, 860 F.2d 529, 541 (2d Cir.1988), a mandatory
injunction "'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly
disfavored'" under the law of the Ninth Circuit.[4]  <u>Anderson</u>, 612 F.2d at 1114 (quoting <u>Martinez v.</u>
<u>Mathews</u>, 544 F.2d 1233, 1243 (5th Cir.1976)).  A request for a mandatory preliminary injunction is
subject to a "higher degree of scrutiny because such relief is particularly disfavored, <u>Stanley v.</u>
<u>University of Southern California</u>, 13 F.3d 1313, 1320 (citing Anderson, 612 F.2d at 1114), and the
district court should deny such relief "'unless the facts and law clearly favor the moving party.'"
<u>Martinez</u>, 544 F.2d at 1243.

### B.  Possibility of Irreparable Injury and Probable Success on the Merits

Alta Mere argues that the facts dictate probable success on the merits in its favor at trial, and
that it will suffer irreparable injury unless a mandatory preliminary injunction is granted.
Specifically, Alta Mere argues that it exercised the option to buy the franchise business through its

---

[4] In Anderson, the Ninth Circuit held that mandatory injunctions should not be granted "unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." 612 F.2d at 1115.

communications with Loiacano and L&M, and through its actions towards purchase.  Alta Mere also argues that the franchise agreement entered into by the parties dictates that the phone numbers associated with the franchise business belong to Alta Mere, and that Alta Mere suffers, and will continue to suffer irreparable damages if the Court does not order Plaintiffs to sell the franchise business pursuant to the settlement agreement, and enjoin Plaintiffs from using the telephone numbers at issue.  Plaintiffs, in opposition, contend that Alta Mere will not prevail on the merits at trial or suffer irreparable injury without injunctive relief  because Alta Mere failed to close the purchase within the sixty-days allotted under the settlement agreement and because the phone numbers associated with the Malo name belonged to Loiacano prior to entering into any franchise agreement.

**1. Possibility of Irreparable Injury**

The granting of specific performance is a matter within the discretion of the Court, taking into account principles of equity and the individual circumstances of the case.  See generally Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co., 414 F.2d 750, 758 (9th Cir. 1969) (determination of whether specific performance should be granted in breach of contract sale held to be within sound discretion of the trial court).  Here, Alta Mere argues that the franchise business is unique to the point that Alta Mere has no adequate remedy at law other than specific performance under the settlement agreement, and that it will suffer irreparable injury unless a mandatory preliminary injunction is granted.  Specifically, Alta Mere proffers that the franchise business is unique, as is the relationship between its brand and its customers.  As such, Alta Mere argues that it is impossible to quantify the alleged damages it has suffered, and will continue to suffer if not allowed to purchase the franchise business from Loiacano and Malo, or enjoin Loiacano's use of the phone numbers that have been used in conjunction with the Alta Mere franchise and marks for the last ten years.  Plaintiffs do not contend that the business or the relationship between the Alta Mere

6

brand and its customers is unique.  Instead, Plaintiffs only contend that Defendants will not suffer irreparable harm because they unilaterally failed to exercise the option during the allotted sixty-day time period.

Here, the Court finds that the relationship between the Alta Mere trademarks/brand and the recognition of that brand creates a unique association and relationship with its customers.  As such, Alta Mere will be irreparably injured if it is unable to purchase the franchise business.  Loiacano and Malo have used the Alta Mere brand in conjunction with the franchise business since 1994.  Therefore, customers have associated the Alta Mere brand with the franchise business, its service, warranties, and products for over ten years.  Now, Plaintiffs assume that because they have not renewed Alta Mere's Yellow Pages ad, they have successfully distanced themselves from the Alta Mere brand.

The Court finds that Plaintiffs' use of the same  telephone numbers, franchise location, and assets to run a competing business especially harmful to Defendant.  Moreover, because of the uniqueness of the franchise business, relationship with customers, potential for confusion, use of the Alta Mere brand, lack of warranty service for Alta Mere customers, and location of the franchise business, the Court finds that equitable relief cannot be adequately measured in monetary compensation, and therefore, that a grant of specific performance is an appropriate remedy.[5]

**2. Success on the Merits**

The Supreme Court of Nevada has held that "an option to purchase property is a contract wherein the owner, in return for valuable consideration, agrees with another person that the latter may buy property within a specified time upon express terms and conditions." Mohr Park Manor, Inc. v. Mohr, 424 P.2d 101, 110 (Nev. 1967).  Under Nevada law, there are two steps required to

---

[5] "[T]he underlying objective in choosing the form of relief to be granted is to select a remedy that will adequately protect the legally recognized interest of the injured party."  Rest. 2d of Contracts § 359.

exercise an option to purchase property.  "First, there must be the decision of the optionee to purchase under the exact terms of the option; and second the communication of this decision to the optionor within the period of the option."  Milner v. Dudrey, 362 p.2d 439, 443–44 (Nev. 1961). "An option is exercised by the giving of an unconditional notice that the holder does elect to exercise it."  Id. at 444.

Here, Defendant has successfully proven that it fulfilled both required steps to exercise its option to buy the franchise business under Nevada law.

The language of the settlement agreement entered into by the parties states,

> If the Business is not sold within the conclusion of the Listing Period (as extended pursuant to this Agreement), Alta Mere shall have the option, exercisable within 60-days of the expiration of the Listing Period, (or upon the conclusion of any extension pursuant to Paragraph 4(c), to purchase the Business for $50,000.

(Pl.s' Response Ex. 1).  The option clause specifies no required date of closing, but rather, gives Alta Mere sixty-days in which to exercise its purchase option.  The Court finds no reason to imply from the settlement agreement that Alta Mere was required to close the sale by the end of the sixty-day option period as Plaintiff suggests.  Furthermore, the record is replete with evidence that Alta Mere exercised its option with the sixty-day period.

On August 23, 2006, Alta Mere's attorney sent a letter to Plaintiffs' attorney stating that Alta Mere "hereby exercises the Option" in accordance with the settlement agreement, and requested the materials needed to draft an asset purchase agreement.[6]  Thereafter, the parties corresponded on various occasions regarding the conditions of sale.  Particularly, there were discussions regarding the placement, or re-placement of a Yellow Pages ad for the business, the date of closing, financial

---

[6]The items requested in the letter include: (1) a current balance sheet; (2) a current equipment and inventory list, (3) a profit and loss statement for each month of 2006, and (4) a lease assignment or new lease agreement with the landlord for the business franchise premises. (Pet. for Removal Ex. 2 at 6).

documents, and the terms of the asset purchase agreement.[7]  On October 19, 2006, Alta Mere sent Loiacano and Malo an asset purchase agreement comporting with the terms of the settlement agreement, and a $15,000 refundable deposit to be entrusted with Plaintiffs' attorney as an escrow holder, to be released to Plaintiffs upon closing. (Pet. for Removal Ex. 16).

Plaintiffs now argue that Loiacano did not sign the asset purchase agreement because it contained "numerous provisions to which Mr. Loiacano never agreed." (Pl.s' Opp. at  9).  Plaintiffs' arguments are unconvincing.  Particularly, Plaintiffs point out that the asset purchase agreement required "[a] copy of Sellers' 2005 tax return and audited financial statements" (Pet. For Removal Ex. 16 at 4(c)), and argue that Loiacano failed to sign the agreement because of the requirement for an audited financial statement.  The Court finds Plaintiffs' argument regarding the asset purchase agreement unconvincing.   According to the evidence before the Court, the parties met on October 11, 2006, and discussed the terms of an asset purchase agreement.  A draft of that agreement was then sent to Plaintiffs on October 19, 2006.  Rather than signing the asset purchase agreement as discussed however, Plaintiffs sent a letter to Defendants' counsel arguing that the agreement would not be signed until money was transferred to Plaintiffs' attorney's trust account, that the agreement contained "terms to which [Loiacano] never agreed, and that there was "no need for a separate purchase agreement." (Pet. for Removal Ex. 18).  Specifically, Plaintiff requested that the entire $50,000 purchase price be sent by Defendant for deposit into the trust account of Plaintiffs' attorney. The Court finds this demand to be extremely unreasonable as well as imprudent given the possibility that the parties would fail to agree on deductions from the purchase price or that the trust account itself could become compromised.  In fact, during the hearing, Plaintiffs' counsel acknowledged that, at some point during this transaction, his trust account had actually been compromised.

---

[7]Alta Mere's attorney sent letters indicating his client's obvious desire to exercise its option on various dates, including: August 23, 2006; September 21, 2006; October 5, 2006; October 6, 2006; and October 19, 2006.

9

While noting Plaintiffs' concern regarding the requirement of audited financial statements, the Court finds that Plaintiffs' refusal to sign the asset purchase agreement, while failing to list aspects of the agreement to which they disagreed demonstrates Plaintiffs' lack of candor, and overall lack of intent to sell the franchise business.

Though Plaintiffs have notably stated their current desire not to sell the franchise business, even a cursory examination of Plaintiffs' behavior suggests that in spite of agreeing to do so in the settlement agreement, it was never Plaintiffs' intent to sell the franchise business. Plaintiffs have gone to extensive lengths to prevent Alta Mere, or any other party from purchasing the franchise business. Plaintiffs refused to list the franchise business for sale as an Alta Mere franchise with a qualified broker as required under the settlement agreement. Plaintiffs refused to sell the franchise business to Stewart Reeder in spite of his obvious interest and various attempts to engage Loiacano in sale discussions. Plaintiffs repeatedly refused to sell the franchise business back to Alta Mere, claiming that there was no need to enter into an asset purchase agreement, or that Alta Mere had refused to close within the specified time allotted under the Settlement Agreement. Given the evidence and allegations of Loiacano's tactics of transferring the assets of the Alta Mere business, declaring to the bankruptcy court that the business had no monetary value, and his attempt to run a competing business, Alta Mere's request for an asset purchase agreement prior to sale was entirely reasonable and appropriate under the settlement agreement. Likewise, the request for financial statements was also reasonable and appropriate, as the evidence indicates Plaintiffs' financial statements were rarely, if ever, current or sufficiently adequate to allow Alta Mere or any potential buyer to understand the franchise business's debts and/or liabilities. For these reasons, the Court finds that the law strongly favors Defendant Alta Mere, and that Alta Mere is likely to succeed on the merits at trial.

**C. Serious Questions Going to the Merits**

"Serious questions" are "questions which cannot be resolved one way or the other at the hearing on the injunction." <u>Rep. of the Philippines v. Marcos</u>, 862 F.2d 1355, 1362 (9th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1035 (1989).  To be considered "serious" a question must be sufficiently "substantial, difficult and doubtful" so as to require further investigation. <u>Id.</u> Such questions need not show a certainty or even probability of success, but they "must involve a 'fair chance of success on the merits.'" <u>Id.</u> (quoting <u>Nat'l Wildlife Fed'n v. Coston</u>, 773 F.2d 1513, 1517 (9th Cir.1985)).

Having reviewed the record in this case extensively, together with the evidence presented at the evidentiary hearing, the Court finds that the record raises no questions requiring further investigation.  The parties have thoroughly briefed the issues before the Court and have provided ample evidence supporting their claims.  The Court finds no need for a further hearing or briefing on the matter.

**D. Balance of Hardships**

The Court finds that the balance of hardships leans heavily toward Defendants.  Though the standard for a mandatory preliminary injunction is somewhat higher than that of a regular injunctive measure, the Court finds the facts and law here involved clearly favor the moving party.  Defendants will suffer irreparable harm if the Court does not order Plaintiffs to sell the franchise business pursuant to the settlement agreement at this time.  According to the settlement agreement, Loiacano and Malo were required to sell the franchise business to Defendants if they exercised their option within the sixty-day period.  It has been established that Defendants successfully exercised that right within the allotted time, and thus should have been granted the opportunity to consummate the sale.  Without the mandatory injunction at this time, Plaintiffs will continue to run a competing business located in the same locale as the franchise business, use the assets of the franchise business, and use the same phone numbers that were associated with the Alta Mere franchise business for over ten

11

years.   Further delay in enforcing the settlement agreement may cause difficulty for either party in obtaining an extended lease for the franchise premises and ongoing customer confusion regarding the Alta Mere brand.  Plaintiffs benefitted greatly from the settlement agreement.  Amongst other things, Alta Mere dismissed all pending litigation against Plaintiffs in Illinois, its adversary complaint, the Loiacano default judgment ($142,329.05), the L&H default judgment ($170,329.62), and Plaintiffs were given the opportunity to continue operating the franchise business for one year while seeking out potential buyers.  Instead of listing the franchise business with a qualified broker or selling to interested buyers however, Loiacano and Malo continued with their operation of the business, and ultimately refused to sell the franchise business back to Alta Mere.

Loiacano has indicated that he will suffer if the Mandatory Preliminary Injunction is granted because window tinting and its related field is the only way in which he knows to make a living, and that being required to sell the franchise business at this time will deprive him of his livelihood. Furthermore, at the evidentiary hearing, Plaintiff indicated that should the Court grant the Injunction, Loiacano's employees will also be without work and will suffer the hardship of temporarily not having an income.

The settlement agreement entered into by the parties requires a cooling off period for four months after the sale of the franchise business in which Plaintiff Loiacano may not engage in any business offering window tinting and/or car alarms installation services, or auto and truck accessories in the state of Nevada.  (Pet. for Removal Ex. A, 1 at 5).  The settlement agreement also provides that after the cooling off period, Plaintiff Loiacano must have no interest (as a disclosed or beneficial owner, director, officer, employee, manager or agent,) in any business offering window tinting and/or car alarm installation services within a 10 mile radius of the franchise business location, for a period of two years.  Id.  As disclosed at the evidentiary hearing, the 10 mile radius was specifically requested by Plaintiffs, as opposed to Defendants' proposed 25 mile radius, as a term of the

settlement agreement.  Upon examining the record before it, the Court finds that the hardships imposed upon Plaintiffs, the cooling-off period combined with the covenant not to compete within a ten mile radius, pale in comparison to the hardships Defendants will suffer if the injunction is not granted at this time.

Plaintiff further argues that enjoining the use of the telephone numbers at issue will lead to hardship because Loiacano has placed ads in the Yellow Pages affiliating these numbers with his new business.  This argument is not persuasive however, as Defendants will likewise suffer hardship in that past Yellow Pages ads have advertised the same numbers along with the Alta Mere mark and franchise business name.  Though Plaintiff will suffer hardship if unable to advertise new numbers until the next available Yellow Pages distribution, the failure to transfer use of such numbers will cause greater hardship to Alta Mere through customer confusion and trade mark association.  Furthermore, the initial franchise agreements require Plaintiffs to transfer said numbers to Alta Mere upon termination of the franchise agreement.[8]  Thus Plaintiffs agreed to said transfer as a condition of entering into the franchise agreement.  Furthermore, any agreement by Alta Mere that the phone numbers belonged to Malo was for purposes of public utility service regulations and, in any event, lacked consideration.

For these reasons, the Court finds that the balance of hardships leans heavily in favor of the Defendants.

---

[8]The franchise agreement states,

Franchisee acknowledges that as between Franchisor and Franchisee, Franchisor has the sole right to and interest in all telephone numbers and directory listings associated with the [Alta Mere] marks, and Franchisee authorizes Franchisor, and hereby appoints Franchisor and any officer of Franchisor as his attorney in fact, to direct the telephone company and all listing agencies to transfer same to Franchisor or at its direction, should Franchisee fail or refuse to do so, and the telephone company and all listing agencies may accept such direction or this Agreement as conclusive of the exclusive right of Franchisor in such telephone numbers and directory listings and its authority to direct their transfer.

(Ans. to Compl. Ex. B Part 2 at 10).

13

### III. Conclusion

Here, Defendants have met the higher standard required to attain a mandatory preliminary injunction.  The facts and law clearly favor the Moving party, and Defendants have proven a likelihood of success on the merits.  Namely, Defendants have proven that they exercised their option to buy the franchise business within the sixty-day period allotted under the settlement agreement, and that the balance of hardships leans heavily in their favor due to the irreparable harm they will suffer if Loiacano and Malo are not ordered to sell the franchise business pursuant to the settlement agreement or enjoined from using the telephone numbers at issue.  For these reasons, the Court hereby grants Defendant's Motion for a Mandatory Preliminary Injunction (#15).

**IT IS HEREBY ORDERED** that Defendant's Motion for Mandatory Preliminary Injunction (#15) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties are, without delay, to proceed with the sale of the franchise business as delineated under the terms of the settlement agreement.  The parties are directed to draft and adopt an asset purchase agreement under which Plaintiffs will provide Defendant with accurate financial and liability statements.

**IT IS FURTHER ORDERED** that Plaintiffs are enjoined from using the telephone numbers (702)243-8338, and (702)454-4000, and are ordered to direct the relevant telephone companies to transfer ownership of said telephone numbers to Alta Mere.

DATED this 6th day of June 2007.

_____

Kent J. Dawson
United States District Judge

14